## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **CONGRUENT MEDIA RESOURCING LLC,** | C.A. No. 2:25-cv-01132 |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| **CISCO SYSTEMS, INC.,** | **PATENT CASE** |
| Defendant. | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Congruent Media Resourcing LLC files this Original Complaint for Patent Infringement against Cisco Systems, Inc. and would respectfully show the Court as follows:

### I.  THE PARTIES

1.      Plaintiff Congruent Media Resourcing LLC ("Plaintiff") is a Texas limited liability company with a principal place of business located at 5900 Balcones Drive, Suite 100, Austin, Texas 78731.

2.      On information and belief, Defendant Cisco Systems, Inc. ("Defendant") is a corporation organized and existing under the laws of Delaware with a place of business at 2300 East President George Bush Highway, Richardson, TX 75082. Defendant has a registered agent, Corporation Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

### II.  JURISDICTION AND VENUE

3.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

4.      On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Texas Long-Arm Statute, due at least to its

business in this forum, including at least a portion of the infringements alleged herein. Furthermore, Defendant is subject to this Court's specific and general personal jurisdiction because Defendant maintains a place of business at 2300 East President George Bush Highway, Richardson, TX 75082.

5.      Without limitation, on information and belief, within this state and this District, Defendant has used the patented inventions thereby committing, and continuing to commit, acts of patent infringement alleged herein.  In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within Texas and this District.  Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from services provided to persons or entities in Texas and this District. Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its providing services within Texas and this District.  Defendant has committed such purposeful acts and/or transactions in Texas and this District such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

6.      Venue is proper in this district under 28 U.S.C. § 1400(b). On information and belief, Defendant maintains a place of business at 2300 East President George Bush Highway, Richardson, TX 75082.  On information and belief, from and within this District Defendant has committed at least a portion of the infringements at issue in this case.

7.       For these reasons, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. § 1400(b).

### III.   UNITED STATES PATENT NO. 9,135,418

8.      Plaintiff incorporates the above paragraphs herein by reference.

9.      On September 15, 2015, United States Patent No. 9,135,418 ("the '418 Patent") was duly and legally issued by the United States Patent and Trademark Office.  The '418 Patent is titled "System and Method for Creating Secure Applications."  A true and correct copy of the '418 Patent is attached hereto as Exhibit 1 and incorporated herein by reference.

10.      Congruent Media Resourcing LLC is the assignee of all right, title, and interest in the '418 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '418 Patent.  Accordingly, Congruent Media Resourcing LLC possesses the exclusive right and standing to prosecute the present action for infringement of the '418 Patent by Defendant.

11.      The invention in the '418 Patent relates to systems and methods for creating secure workspaces and applications, including the management and enhancement of same. (Ex. 1 at 1:16-19).  The goal of the '418 Patent is to reduce security breaches by creating secure workspaces and applications.  (*Id.* at 1:16-38).  To do this, the '418 Patent discloses imposing one or more intercepts that convert an unsecured target application to a secure application.  (*Id.* at 1:54-57).  An intercept may be considered as an actual replacement of existing instruction or a new instruction that may interrupt program flow and conditionally return control to the program flow.  (*Id.* at 1:66-2:3).  By adding an intercept, the behavior of the secure application can be different from the original behavior of the target application.  (*Id.* at 1:57-61).

12.      The '418 Patent further explains that when the intercept is added to the targeted application, the now secure application can be repackaged with the bound intercepts integrated with the original file.  (*Id.* at 2:4-6).  As a result of the repackaging, the intercepts may be physically inseparable from the original files following the repackaging of the secure application, which can

result in an immutable deployable entity.  (*Id.* at 2:7-10).  This feature can prevent the secure application from having the intercepts removed by an authorized party.  (*Id.* at 2:10-11).

13.     In addition, generating the secure application can preserve the operating system interactions that were originally defined for the target application and the operating system for which the target application was designed.  (*Id.* at 2:11-15).  Preserving the operating system interactions can ensure that the secure application, even with the modifications to secure it, will continue to work with its intended operating system and that original behavior that was designed into the target application may still be permitted to be performed with the secure application in keeping with the scope of any acquired policy enforcement mechanism.  (*Id.* at 2:15-21).

14.     The '418 patent provides details regarding how application securitization occurs. Specifically, it discloses that one way application wrapping may occur is via an automated process in which no source code is modified, thereby reducing programmer oversight and errors.  (*Id.* at 12:19-26).  Additionally, the '418 patent provides examples of this, including 1) replacing references to system services with references to a library that applies the necessary mechanisms and policies and 2) inserting secure references into the code of an application to replace non secure references.  (*Id.* at 12:24-35).  Specifically, this securitization process may include interposing system API calls to allow a secure framework to intercept and control application functions.  (*Id.* at 21:43-49).  This process may further include encryption for additional protection of applications. (*Id.* at 21:49-58).  One major benefit may be that management layers may be injected onto the compiled applications, removing the need for source code or developer implemented application changes.  (*Id.* at 12:36-47).

15.     The '418 patent also discloses technical examples of the use of securing applications via an intercept.  One example method is called byte code injection, which replacing

byte code API calls with intercepts.  (*Id.* at 22:45-51).  This is particularly useful for applications formatted for the Android operating system.  (*Id.*; *also* Figure 11; 23:45-60).  Another disclosed technical method is to link replacement calls for native object code.  (*Id.* at 22:51-57).  This method is useful for applications that use native code and do not run under a virtual machine.  (*Id.*).  An example of this type of injection is link injection, which replaces preexisting system calls or the inclusion of new instructions in an immutable entity.  (*Id.* at 24:64-25:24).  The '418 Patent further discloses that linking order may be statically or dynamically linked, and that priority can be established during runtime.  (*Id.* at 25:6-17).  Finally, a system of obfuscation may prevent further modification or reversal of the securitization process.  (*Id.* at 25:15-17).

16.    The '418 patent further discusses the technical benefits of repackaging the target application during a reconstruction phase.  (*Id.* at 24:3-21).  This is performed by a repackager.  (*Id.* at 3-7).  The repackager may be made of software or hardware elements and may be further modified by secure object references injected before.  (*Id.* at 24:7-9).  In addition, this reconstructed and modified application may need a new certificate to be trusted.  (*Id.* at 24:11-16).

<u>**Asserted Claim**</u>

17.    Claim 9 of the '418 Patent claims:

A method of generating a secure application, comprising:

via a processor:

receiving a target application that is designed to interact with an operating system;

configuring the target application by imposing one or more intercepts on the target application, wherein the imposition of the intercepts converts the target application into a secure application that maintains the interaction with the operating system; and

repackaging the secure application such that the intercepts are integrated with the secure application and are inseparable from the secure application.

## IV.  COUNT I
## (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 9,135,418)

18.     Upon information and belief, Defendant has directly infringed claim 9 of the '418 Patent in Texas, in this District, and elsewhere in the United States, by using and performing the claimed method by using the Cisco Secure Application ("Accused Instrumentality").

19.     **Direct Infringement**. As explained below, Cisco, using Cisco Secure Application, performs a method of generating a secure application.  Cisco Secure Application is available in a standalone form or as part of the Cisco Observability Platform. Cisco Secure Application may utilize an AppDynamics Agent to generate a secure application. Cisco Secure Application is an application tool for runtime.



Introducing Cisco Secure Application.

Cisco Secure Application protects applications at runtime, detects and block attacks in real-time, and simplifies the lifecycle of security incidents by providing application and business context and creating a shared context across Application and Security teams. Natively built into AppDynamics full-stack observability platform, Cisco Secure Application embeds security into the application runtime without adding performance overhead to unlocks security insights without friction.

Needed now more than ever, Cisco Secure Application continuously detects vulnerabilities and threats, block attacks, and provides business context so teams can prioritize remediation by business impact.  It helps security teams investigate breaches, an essential factor in business continuity, turning thousands of hours of prevention and detection into seconds, enabling customers to reduce friction and catch threats in moments, not months.

Cisco Secure Application is the first line of defense, an organic layer of security and an integral part of a comprehensive monitoring strategy from within the application runtime—and for every application environment.  With awareness into the application topology and business context, AppOps can scope a security incident and understand the potential impact to users and the business and strategically prioritize response. SecOps can achieve visibility into attacks based on deep application insight that eases alert fatigue and provides shared context when talking to application teams. Security professionals can identify runtime vulnerabilities and fixes with business value prioritization.

generating a secure application

(*E.g.*,     https://blogs.cisco.com/security/cisco-secure-application-a-new-approach-to-application-security).

## Cisco Secure Application

> generating a secure application

Cisco Secure Application provides business-risk based visibility of security issues so that Security, Data, and IT teams can prioritize fixes for cloud native applications. This visibility reduces the risks associated with an application, its data, and infrastructure in the cloud. The Cisco Secure Application requires adding either the Cloud Security module, or the Data Security module.

Cisco Secure Application is available as standalone application on the Cisco Observability Platform. This page provides details of Cisco Secure Application, Cloud Security, which is also integrated into Cisco Cloud Observability. This integration allows you to deploy both applications, Cisco Secure Application and Cisco Cloud Observability, to receive insights across security, application, and infrastructure domains.

(*E.g.*, https://docs.appdynamics.com/observability/cisco-cloud-observability/en/extend-cisco-cloud-observability/cisco-cloud-observability-modules/cisco-secure-application).



(*E.g.*, https://www.ciscolive.com/c/dam/r/ciscolive/global-event/docs/2024/pdf/BRKSEC-1585.pdf).



(*E.g.*, https://www.youtube.com/watch?v=5ONlFWddPeI).

20.     Cisco, using Cisco Secure Application, performs the step of receiving a target application that is designed to interact with an operating system.  As explained below, Secure Application secures a target application at runtime.  Upon information and belief, the target application interacts with an operating system. The diagram below shows the role of Cisco Secure Application within the larger application security pipeline.  Cisco Secure application "includes Runtime Self Application Protection" and IAST, for instance.



(*E.g.*,    https://www.ciscolive.com/c/dam/r/ciscolive/global-event/docs/2024/pdf/BRKSEC-1585.pdf).



(*E.g.*,    https://www.ciscolive.com/c/dam/r/ciscolive/global-event/docs/2024/pdf/BRKSEC-1585.pdf).



(*E.g.*, https://www.youtube.com/watch?v=5ONlFWddPeI).



(*E.g.*, https://www.youtube.com/watch?v=5ONlFWddPeI).

21.     Cisco, using Cisco Secure Application, performs the step of configuring the target application by imposing one or more intercepts on the target application, wherein the imposition of the intercepts converts the target application into a secure application that maintains the interaction with the operating system.  Cisco Secure Application provides a system that imposes intercepts on the target application.  For example, this occurs during runtime. Cisco Secure Application is "bundled with the agent."  Cisco describes that the AppDynamics Controller is apart from this bundled agent. Application monitoring, a feature of Cisco Secure Application, may be performed via Bytecode Transformer Logging.  This "BCI engine is used to inject interceptors." (https://docs.appdynamics.com/appd/24.x/latest/en/application-monitoring/administer-app-server-agents/agent-log-files/bytecode-transformer-logging).     The purpose of Cisco Secure Application is to support Cisco Security Integrations, providing threat intelligence via instant insight. Cisco Secure Application is "not just going against some repository which may just have dead code; libraries which have never [been] used.  * * *  It is part of the running application so it can actually – it shows you – the libraries that have been used by that application." (https://www.youtube.com/watch?v=5ONlFWddPeI at 50:56).



(*E.g.*,     https://blogs.cisco.com/security/cisco-secure-application-a-new-approach-to-application-security).



(*E.g.*, https://www.youtube.com/watch?v=6DYBDi3mUJ0 at 1:30).



(*E.g.*, https://docs.appdynamics.com/appd/24.x/latest/en/application-monitoring/administer-app-server-agents/agent-log-files/bytecode-transformer-logging).



(*E.g.*, https://www.youtube.com/watch?v=5ONlFWddPeI 16:48).



(*E.g.*, https://www.youtube.com/watch?v=5ONlFWddPeI 51:00-51:12).

22.     Cisco, using Cisco Secure Application, performs the step of repackaging the secure application such that the intercepts are integrated with the secure application and are inseparable from the secure application.  Upon information and belief, when interceptors are injected, this creates a secure application upon integration. The Java in process agent is another method for creating a secure application. Cisco Secure Application describes being able to provide a secure application because "it has the context, it's part of the application." (https://www.youtube.com/watch?v=5ONlFWddPeI at 18:07)



(*E.g.*,  https://docs.appdynamics.com/appd/24.x/latest/en/application-monitoring/administer-app-server-agents/agent-log-files/bytecode-transformer-logging).



(*E.g.*, https://learn.microsoft.com/en-us/azure/spring-apps/basic-standard/how-to-appdynamics-java-agent-monitor).



(*E.g.*, https://www.youtube.com/watch?v=5ONlFWddPeI at 18:07).

23.    **Indirect Infringement**. Upon information and belief, Defendant has been and now is indirectly infringing by way of inducing infringement and contributing to the infringement of claim 9 of the '418 Patent in the State of Texas, in this District, and elsewhere in the United States, by providing the Accused Instrumentality for use as described above by Defendant's customers. Defendant advertised, offered for sale, and/or sold the Accused Instrumentality to its customers for use in a manner that Defendant knew infringed claim 9 of the '418 Patent. For example, Defendant provided marketing material and videos advertising that the Accused Instrumentality performs the claimed method of generating a secure application from a target application designed to interact with an operating system as claimed in claim 9 of the '418 Patent. (*Supra* ¶¶19-22 (identifying marketing materials and videos)).

24.    On information and belief, since Defendant became aware of the '418 patent and the infringement at least as of the date of the service of the original Complaint, Defendant is and

has been committing the act of inducing infringement by specifically intending to induce infringement by providing the Accused Instrumentality to its customers and by aiding and abetting its use as demonstrated by the marketing materials in a manner known to infringe by Defendant. Since becoming aware of the infringing use of the Accused Instrumentality, Defendant knew that the use of the Accused Instrumentality by its customers as instructed constituted direct patent infringement. Despite this knowledge, Defendant continued to encourage and induce its customers to use the Accused Instrumentality to infringe as described above and provided instructions for using the Accused Instrumentality to infringe, including through instructional materials, support, and user's guides. Exemplary materials are cited above. (*Supra* ¶¶19-22 (identifying marketing materials and videos)).  Defendant therefore knowingly induced infringement and specifically intended to encourage and induce the infringement of the '418 Patent by its customers.

25.    On information and belief, since Defendant became aware of the infringement at least as of the date of the service of the original Complaint, Defendant is and has been committing the act of contributory infringement by intending to provide the identified Accused Instrumentality to its customers knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '418 Patent, and further knowing that the accused use of the Accused Instrumentality is not a staple article or commodity of commerce suitable for substantially non-infringing use. As described above, Defendant was aware that all material claim limitations are satisfied by the use and implementation of the Accused Instrumentality by Defendant's customers in the manner described above yet continued to provide the Accused Instrumentality to its customers knowing that it is a material part of the invention. (*Supra* ¶¶19-22 (identifying marketing materials and videos)).  As described above, since learning of the infringement, Defendant knew that the use and implementation of the Accused Instrumentality by its customers

was made and adapted for infringement of the '418 Patent. (*Id.*). A new act of direct infringement occurred each time a customer implemented and/or used the Accused Instrumentality in the manner described above. After Defendant became aware that the use of the Accused Instrumentality infringes at least claim 9 of the '418 Patent, Defendant knew that each such new use was made and adapted for infringement of claim 9 of the '418 Patent and Defendant continued to advertise and provide the Accused Instrumentality for such infringing activities. (*Supra* ¶¶19-22 (identifying marketing materials and videos)).  Furthermore, as described more fully above, the Accused Instrumentality has functionality designed to perform the steps in the manner described above and is therefore not a staple article or commodity of commerce suitable for substantially non-infringing use.  (*Id.*).

26.    Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '418 Patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

27.    Unless a preliminary and permanent injunction is issued enjoining Defendant and all others acting in active concert therewith from infringing the '418 Patent, Plaintiff will be greatly and irreparably harmed.

28.    Plaintiff is only asserting a method claim and as such the marking requirements of 35 U.S.C. 287(a) do not apply. *Crown Packaging Technology, Inc. v. Rexam, Beverage Can Co.*, 559 F.3d 1308, 1316-1317 (Fed. Cir. 2009) ("Because Rexam asserted only the method claims of the '839 patent, the marking requirement of 35 U.S.C. 287(a) does not apply."); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1083 (Fed.Cir. 1983) ("It is 'settled in the case law that the

notice requirement of this statute does not apply where the patent is directed to a process or method." (*Quoting Bandag, Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1581 (Fed. Cir. 1983)). Plaintiff has therefore complied with the marking requirements 35 U.S.C. 287(a).

## V.  JURY DEMAND

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a.   Judgment that claim 9 of United States Patent No. 9,135,418 has been infringed and is being infringed, either literally and/or under the doctrine of equivalents, directly and/or indirectly, by Defendant;

b.   Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, and an accounting of all infringements and damages not presented at trial;

c.   That Defendants be preliminarily and permanently enjoined from any further activity or conduct that infringes;

d.   That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein; and

e.   That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

November 18, 2025                          DIRECTION IP LAW

                                           /s/Steven G. Kalberg
                                           David R. Bennett (IL Bar No.: 6244214)
                                           Steven G. Kalberg (IL Bar No.: 6336131)
                                           PO Box 14184
                                           Chicago, Illinois 60614-0184
                                           Telephone: (312) 291-1667

dbennett@directionip.com
skalberg@directionip.com

*Attorneys for Plaintiff*
*Congruent Media Resourcing LLC*